**PERKINS COIE LLP**
James G. Snell (Bar No. 173070)
*JSnell@perkinscoie.com*
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone:  +1.650.838.4300

Lauren J. Tsuji (Bar No. 300155)
*LTsuji@perkinscoie.com*
Anna Thompson-Lanners (*Pro Hac Vice*)
*AThompsonLanners@perkinscoie.com*
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone:  +1.206.359.8000
Facsimile:   +1.206.359.9000

*Attorneys for Defendant IGN Entertainment, Inc.*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PETER OSTINI, MICHAEL CHAVARRIA, DAVID RAMIREZ, ROBERT PRADO, and STACY PENNING, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>IGN ENTERTAINMENT, INC.,<br><br>    Defendant. | Case No. 5:26-cv-01375-EJD<br><br>**IGN ENTERTAINMENT, INC.'S NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        August 27, 2026<br>Time:        9:00 a.m.<br>Location:   Courtroom 4, 5th Floor<br>Judge:       Hon. Edward J. Davila |

## NOTICE OF MOTION AND MOTION TO STAY

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on August 27, 2026, at 9:00 a.m., or as soon thereafter as this Motion may be heard before the Honorable Edward J. Davila at the United States District Court for the Northern District of California, San Jose Division, located at 280 South First Street, San Jose, California, in Courtroom 4 – 5th Floor, Defendant IGN Entertainment, Inc. ("IGN"), by and through its counsel of record, will and hereby does, move the Court for an order to stay these proceedings.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities herein, the Request for Judicial Notice and the exhibits attached thereto, the pleadings and papers on file in this action and any argument and evidence to be presented at the hearing on this Motion, and any other matters that may properly come before the Court.

This Motion is made on the grounds that the interlocutory appeal in *Variety Media v. Cal. Sup. Ct.*, which is currently before the California Court of Appeal, is poised to resolve some of the issues central to claims under the Pen Register Act, including the claims at issue here.

-i-

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   INTRODUCTION

Defendant IGN Entertainment, Inc. ("IGN") respectfully requests that this Court temporarily stay this matter pending the resolution of the interlocutory appeal in *Variety Media LLC v. Cal. Sup. Ct.* ("*Variety Media*"), which is currently before the California Court of Appeal.[1] *Variety Media* arises out of a virtually identical claim alleging a violation of California's Pen Register Act, Cal. Penal Code § 638.51, and will address whether the Pen Register Act applies to commonplace, web-based advertising and analytics software like the trackers alleged to be at issue here. *See* Ex. A, Pet. for Writ of Mandate, *Variety Media LLC v. Cal. Sup. Ct.*, No. B350578 (Cal. Ct. App. Nov. 21, 2025) at 15; Ex. B, Order to Show Cause, *Variety Media LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App. Jan. 8, 2026).[2] The forthcoming ruling in *Variety Media* may render Plaintiffs' Pen Register Act claim—and thus their entire lawsuit against IGN—a dead letter. But even if it does not, *Variety Media* will invariably shape the issues in this case should it survive dismissal on Rule 12. California's Pen Register Act has not yet been interpreted by *any* state or federal appellate court, and in the absence of such guidance, courts have reached dramatically different conclusions about where and how the Pen Register Act applies and what is required to state a claim. *See infra* at Section II.A. *Variety Media* may therefore impact every aspect of this case, from what is required to state a claim at the pleadings stage, to the scope of fact and expert discovery, to the resolution of complex class-certification issues and dispositive motions. These issues are likely to be decided relatively soon: *Variety Media* will be fully briefed and submitted for decision in June 2026. Allowing this case to proceed in the meantime thus risks substantial

---

[1] IGN's and Plaintiffs conferred through counsel on April 29, 2026 to determine whether this request could be submitted jointly. However, Plaintiff's counsel would not agree to the requested stay.

[2] The Ninth Circuit has also taken up interlocutory appeal in a separate case alleging a violation of the Pen Register Act. *See Drummer v. CoStar Grp., Inc.*, No. 5:25-cv-01047-JGB(SPx), 2026 WL 712922, at *1 (C.D. Cal. Feb. 13, 2026), No. 26-1652 (9th Cir. Mar. 19, 2026). That case will address whether the plaintiff's allegations there satisfied the standing requirements of Article III, and specifically whether "the transmission to third parties of IP addresses and similar information voluntarily shared with websites constitute[s] an injury with a close relationship to a harm traditionally recognized as a basis for a lawsuit[.] *Id.*, at *2. While IGN does not presently seek dismissal under Rule 12(b)(1), it notes that the forthcoming ruling in *Drummer* may also be instructive in the proper interpretation of the Pen Register Act.

expenditure of party and judicial resources that may be obviated by a forthcoming ruling. Accordingly, staying this case will promote judicial economy. Without a stay, IGN will face hardship by having its motion to dismiss heard without the benefit of clear guidance from the California Court of Appeal. By contrast, Plaintiffs will not be prejudiced by a brief stay, as this case is still in its early stages. Indeed, as other plaintiffs in similar cases have acknowledged in stipulations to stay those cases, the requested stay stands to benefit both the parties and this Court.

## II.    BACKGROUND

### A.    California's Pen Register Act & Recent Case Law

Since the Pen Register Act was enacted over ten years ago, no state or federal appellate court has weighed in on its definitions or scope, much less considered whether it applies to the use of commonplace third-party technologies on websites—an application entirely absent from the legislative history. Indeed, before 2023, "*no court* ha[d] interpreted this provision of CIPA." *Greenley* v. *Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (emphasis added). While there has since been a flood of pen/trap claims against website operators, early decisions in those cases have produced remarkably inconsistent and sometimes contradictory results. For instance, while multiple federal district courts including this one have held that third-party software alleged to capture website visitors' incoming IP addresses when they access a website can constitute an unlawful pen register, California Superior Courts have increasingly held that processes that capture website visitors' incoming IP addresses are *not* pen registers. *Compare, e.g.*, *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024) ("Plaintiff adequately alleges that the Trackers record addressing information in the form of IP addresses."); *with, e.g.*, *Rodriguez v. Plivo*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Ct. Oct. 2, 2024) ("Plaintiff's IP address is not the type of information collected by pen registers."); *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4 (Cal. Super. Ct. Sep. 09, 2024) ("[O]btaining IP addresses from ordinary user access does not violate the pen register statute.").

Similarly, while some courts have held that the Pen Register Act applies in the web-browsing context, others have held that the Act is limited to traditional forms of person-to-person

-2-

communications, like telephone calls. *Compare, e.g.*, *Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399, at *6 (N.D. Cal. Oct. 9, 2025) (the Pen Register Act is "technology-neutral, [and] not confined to legacy telephone equipment"); *with, e.g.*, *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025) ("[T]he legislative history of the CIPA suggests that 'pen register' and 'track and trace devices' refers to devices or processes that are used to record . . . information from telephone numbers[.]"); *Garcia v. Diversified Foodservice Supply, LLC*, No. 24STCV19784, 2025 WL 4474677, at *3 (Cal. Super. Ct. June 24, 2025) (the legislature did "not intend to criminalize the process by which all websites communicate with all users who choose to access them.").

This disarray has left website operators without clarity as to which types of common analytics or advertising tools are safe to use on their sites and under what conditions.

**B.      The Pending Interlocutory Appeal in *Variety Media***

The interlocutory appeal in *Variety Media* is poised to resolve some of the issues central to claims under the Pen Register Act, including the claims at issue here. Like this case, *Variety Media* involves a single pen register claim under Section 638.51 relating to tracking software on a website that allegedly captures visitors' IP addresses. *See* Variety Media Pet. For Writ of Mandate ¶¶ 20-21. But for a few inconsequential differences, the underlying allegations in *Variety Media* are virtually identical to those pleaded here, as shown in the comparison below. *See* Ex. C, First Am. Compl., *Rose v. Variety Media, LLC*, No. 25STCV01865 (Cal. Super. Ct. June 27, 2025).

| *Variety Media* First Amended Complaint | *Ostini* Complaint |
|---|---|
| **COUNT I**<br>**Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 638.51(a)** | **COUNT ONE**<br>**Violation Of The California Invasion Of Privacy Act, Cal. Penal Code § 638.51(a) (On behalf of Plaintiff and the Class)** |
| 207. CIPA § 638.51(a) proscribes any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." | 128. Cal. Penal Code § 638.50(b) prohibits any "person" from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." |
| 208. A "pen register" is a "a device or process that records or decodes dialing, | 129. A "pen register" is defined as "a device or process that records or decodes dialing, |

| | |
|---|---|
| routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). | routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." |
| 209. The Trackers are "pen registers" because they are "device[s] or process[es]" that "capture[d]" the "routing, addressing, or signaling information"—the IP address, Device Metadata, and unique user IDs—from the electronic communications transmitted by Plaintiff's and the Class's computers or smartphones. (Cal. Penal Code § 638.50(b).) | 130. The Google and Yahoo tracking technologies used on Defendant's Website are pen registers because they are "device[s] or process[es]" that captured the "routing, addressing, or signaling information," specifically, the IP address and device metadata, from the electronic communications transmitted by Plaintiffs' and Class Members' computers or mobile devices. Cal. Penal Code § 638.50(b).<br><br>131. Likewise, these Trackers qualify as pen registers because they captured the unique identifiers associated with each user through the electronic communications sent from Plaintiffs' and Class Members' browsers to Google and Yahoo. The unique IDs constitute "addressing" information because they link each Website visitor to the third parties' databases and profiles of that user, therefore allowing the identification and tracking of individual users. |
| 211. At all relevant times, Defendant installed the Trackers—which are pen registers—on Plaintiff's and Class Members' browsers, which allowed the Third Parties to collect Plaintiff's and Class Members' IP addresses and Device Metadata. The Trackers also set a unique user identifier on Plaintiff's and Class Members' browsers so the Third Parties could de-anonymize Plaintiff and Class Members and track them across multiple Website sessions and multiple websites. | 132. At all relevant times, Defendant installed and used the Trackers, which are pen registers, on Plaintiffs' and Class Members' browsers and caused the collection and transmission of their IP addresses and other signaling information to Google and Yahoo. |
| 213. The Trackers do not collect the contents of Plaintiff's and the Class's electronic communications with the Websites. (*In re Zynga Privacy Litig.* 750 F.3d 1098, 1108 (9th Cir. 2014) ["IP addresses constitute addressing information and do not | 129. A "pen register" is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a |

-4-

| | |
|---|---|
| necessarily reveal any more about the underlying contents of communication…"] [cleaned up].) | communication."<br><br>4. Because the Trackers capture Website visitors' "routing, addressing, or signaling information," the Trackers constitute a "pen register" under Section 638.50(b) of the California Invasion of Privacy Act ("CIPA"). Cal. Penal Code § 638.50(b). |
| 214. Plaintiff and Class Members did not provide their prior consent to Defendant's installation or use of the Trackers. Nor did Defendant obtain a court order to install or use the Trackers. | 133. Plaintiffs and Class Members never provided prior consent to Defendant's installation or use of the Trackers.<br><br>134. Defendant did not obtain a court order authorizing the installation or use of the Trackers. |
| 215. Pursuant to Cal. Penal Code § 637.2(a), Plaintiff and Class Members have been injured by Defendant's violations of CIPA § 638.51(a), and each seeks statutory damages of $5,000 for each of Defendant's violations of CIPA § 638.51(a). | 135. Pursuant to Cal. Penal Code § 637.2, Plaintiffs and Class Members have been injured by Defendant's violations of Cal. Penal Code § 638.51(a) and seek statutory damages of $5,000 for each violation committed by Defendant. |

Variety Media filed a demurrer in California Superior Court, arguing that "Section 638.51's text, structure, and history, among other considerations, precluded its application to online, non-telephonic data collection." Ex. A ¶ 23. Relying on several federal district court decisions, the court overruled the demurrer. *Id.* ¶ 24. Variety Media then petitioned the California Court of Appeal for a writ of mandate, urging the appellate court to find that "Section 638.51 was never intended to regulate online tracking technologies," because "its language and legislative context make clear that its focus is on telephonic surveillance, not routine website operations." *Id.* ¶ 40. The California Court of Appeal found good cause for the writ petition and issued an Order to Show Cause "why the relief sought . . . should not be granted." Ex. B. The court also stayed further proceedings in the trial court. *See id.* Briefing in response to the court's show-cause order is nearly complete; the parties must submit supplemental briefing to the court by June 5, 2026, with optional reply briefing due June 15, 2026. *See* Ex. D (docket for *Variety Media LLC v. Super. Ct.*, No. B350578 (Cal. Ct. App.)).

The California Court of Appeal takes up writ petitions only where "a significant issue of law is raised, or resolution of the issue would result in a final disposition as to the petitioner." *Cnty. of Santa Clara v. Super. Ct.*, 87 Cal. App. 5th 347, 357 (2023). Even then, the court is "loath to exercise [its] discretion to review rulings at the pleading stage" unless "the circumstances are compelling and the issue is of widespread interest." *Id.* The overwhelming majority of writ petitions are denied outright without any substantive reasoning. *See Omaha Indem. Co. v. Super. Ct.*, 209 Cal. App. 3d 1266, 1271 (1989) ("Approximately 90 percent of petitions seeking extraordinary relief are denied," and "counsel is usually notified in a terse minute order"). And it is even less common for the Court of Appeal to stay the underlying proceedings pending resolution of the writ. *See People v. Super. Ct.*, 17 Cal. 5th 228, 251 (2024) ("Except in very rare cases, neither the filing of a petition for writ of mandate nor the issuance of an order to show cause stays the challenged order or further proceedings in the trial court."). Consequently, in both taking up the writ and staying the proceedings below, the Court of Appeal has signaled that it is likely to issue a consequential ruling that squarely addresses whether the Pen Register Act applies to cases like this one.

Recognizing this, parties in a number of functionally identical pen register cases voluntarily stipulated to stay those proceedings pending the outcome in *Variety Media*. *See, e.g.*, Order Granting Stip. to Stay Case Pending Ruling From Cal. Ct. App., *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, at 3 (N.D. Cal. Feb. 19, 2026), Dkt. No. 82 (recognizing that "the issues raised in the *Variety* Appeal are dispositive as to whether Plaintiff can bring [pen register] claims against Mashable in this case"); *Young et al. v. People, Inc.*, Stip. to Stay Case Pending Ruling From California Court of Appeal, No. 4:25-cv-09588-JST, ECF No. 14, at ¶ 7 (N.D. Cal. Jan 27, 2026) (stipulating to a stay "[b]ecause no other appellate court—whether the Ninth Circuit or California Court of Appeal—has issued a decision on the issue raised in the *Variety* Appeal," and "the *Variety* Appeal will either dispose of or streamline the issues in this case"); Stip. to Stay Proceedings, *Silvey v. VF Outdoor, LLC*, Case No. 8:26-cv-399 FWS (KESx) (C.D. Cal. Mar. 11, 2026), Dkt. No. 13 ("[T]he issues raised in the *Variety* Appeal could significantly impact Plaintiff's Cal. Penal Code § 638.51 claim.").

### III.   LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In the interests of judicial economy, courts may stay proceedings "pending resolution of independent proceedings which bear upon the case." *Ramachandran v. City of Los Altos*, No. 18-cv-01223-VKD, 2022 WL 2479652, at *2 (N.D. Cal. July 6, 2022) (quoting *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863–64 (9th Cir. 1979)); *see also, e.g.*, *Phan v. Transamerica Premier Life Ins. Co.*, No. 20-cv-03665-BLF, 2020 WL 5576358, at * 2 (N.D. Cal. Sept. 17, 2020) (staying proceedings for one year pending California Supreme Court's ruling, the outcome of which "involve[d] the same issues").

When determining whether a stay is appropriate, courts weigh competing interests including (1) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay," (2) "the possible damage which may result from the granting of a stay," and (3) "the hardship or inequity which a party may suffer in being required to go forward." *Ocampo v. Apple Inc.*, No. 5:20-CV-05857-EJD, 2022 WL 1786583, at *1 (N.D. Cal. Apr. 7, 2022) (citations omitted). Each of these factors strongly supports staying this case.

### IV.   ARGUMENT

Courts routinely find that a stay is warranted under the circumstances presented here, e.g., where the California Court of Appeal is poised to decide a controlling question of state law. *See, e.g.*, *Phan*, 2020 WL 5576358, at *1 (staying proceedings for one year pending California Supreme Court's ruling on question of applicability of insurance code to insurance policies affecting outcome of case); *Franklin v. Ocwen Loan Servicing, LLC*, No. 18-cv-03333-SI, 2020 WL 3316058, at *2 (N.D. Cal. June 18, 2020) (staying proceedings pending California Supreme Court's ruling on issue central to the case, the outcome of which "will determine whether plaintiff's claim is viable at all"); *Lew v. Countrywide Fin. Corp.*, No. C–08–1993 SC, 2009 WL 1384975, at *2 (N.D. Cal. Feb. 24, 2009) (staying proceedings pending California Supreme Court's ruling that will "determine what facts [p]laintiff must establish to support his case, which in turn will determine

-7-

the course of discovery"). Here, the rationale for a stay is even stronger. As parties in other virtually identical cases involving claims under the Pen Register Act have recognized, *Variety Media* will likely be "dispositive as to whether Plaintiff can bring [pen register] claims" here. *Fregosa v. Mashable Inc.*, Order on Stip. to Stay Case Pending Ruling From Ca. Ct. of Appeal, 3:25-cv-01094-CRB, ECF No. 82, at (N.D. Cal. Feb. 19, 2026).[3] If the California Court of Appeal determines that the Pen Register Act does not apply to routine website operations, Plaintiffs' sole claim would be subject to dismissal at the outset of the case.

### A.    A Stay Would Promote the Orderly Course of Justice

Temporarily staying these proceedings pending resolution of *Variety Media* would promote "the orderly course of justice" by clarifying "issues, proof, and questions of law" central to the sole claim at issue in this case. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). Judicial economy "is the primary basis courts consider when ruling on motions to stay." *Vance v. Google LLC*, No. 5:20-CV-04696-BLF, 2021 WL 534363, at *6 (N.D. Cal. Feb. 12, 2021). Here, a temporary stay will "serve[] judicial economy" because many "of the issues and legal theories being argued on appeal are identical to those raised" in this case. *Novedades y Servicios, Inc. v. Fin. Crimes Enforcement Network*, No. 25-cv-886-JLS (DDL), 2025 WL 2146861, at *4 (S.D. Cal. July 28, 2025) (cleaned up). As explained in Section II(A), *supra*, that forthcoming ruling could provide much needed clarity regarding the viability of the sole claim in this case, the outcome of which will be at minimum, highly persuasive. *See, e.g.*, *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 820 (9th Cir. 2018) ("[W]hen interpreting state law, federal courts are bound by decisions of the state's highest court," and in "the absence of such a decision, a federal court must predict how the highest state court would decide the issue using intermediate appellate court decisions"); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 724 F.3d 1268, 1278 (9th Cir. 2013)

---

[3] In addition to *Fregosa*, IGN is aware of at least six other stipulated stays in pen register cases pending before federal district courts. *See Young v. People, Inc.*, No. 4:25-cv-09588-JST (N.D. Cal. Jan. 27, 2026), ECF No. 14; *Maketa v. Valnet Inc.*, No. 3:25-cv-05517-RS (N.D. Cal. Mar. 4, 2026), ECF No. 51; *Glass v. CarMax, Inc.*, No. 2:25-cv-09975-SRM-MAA (C.D. Cal. Mar. 5, 2026); *Nguyen v. Macys, Inc.*, No. 5:25-cv-07096-PCP (N.D. Cal. Mar. 18, 2026), ECF No. 42; *Orr v. Sunoco LP*, No. 3:25-cv-03036-S (N.D. Tx. Mar. 26, 2026), ECF No. 14; *Deivaprakash v. Condé Nast Digit.*, No. 3:25-cv-04021-RFL (N.D. Cal. Feb. 25, 2026), ECF No. 47.

-8-

("[W]e will not disregard a well-reasoned decision from a state's intermediate appellate court in this context"); *cf. In re Taco Bell Wage & Hour Actions*, No. 1:07-CV-01314-OWW-DLB, 2011 WL 3846727, at *3 (E.D. Cal. Aug. 30, 2011) (when the plaintiff's "claims are governed by state law," and that "law is in a state of flux," it would be "irrational to proceed" with the case "before state law has been clarified").

Staying this case would thus promote the orderly course of justice by avoiding "inefficiencies and a waste of resources for both the parties and the Court." *Ludlow v. Flowers Foods, Inc.*, No. 18-cv-1190-JLS (JLB), 2020 WL 773253, at *3 (S.D. Cal. Feb. 18, 2020) (entering stay where forthcoming appellate ruling "could be dispositive" of outcome); *Matera v. Google Inc.*, No. 15-CV-04062-LHK, 2016 WL 454130, at *3 (N.D. Cal. Feb. 5, 2016) (same). Even if *Variety Media* does not entirely dispose of this case, the ruling entered there may significantly impact the parties' arguments for and against dismissal and the scope of discovery, class certification, and dispositive motions. *See, e.g.*, *Gong-Chun v. AETNA, Inc.*, No. 1:09-cv-01995-AWI-SKO, 2010 WL 1980175, at *5 (E.D. Cal. May 17, 2010) (granting stay because a pending appeal in another case would "likely impact not only the course of discovery in this matter, but also issues related to class certification").

### B.    IGN Would Face Hardship Without a Stay

IGN is likely to face "hardship or inequity" in proceeding with this case without the guidance of *Variety Media*, and this, too, weighs in favor of a stay. *CMAX*, 300 F.2d at 268; *see also Vance*, 2021 WL 534363, at *5 (hardship factor weighs in favor of a stay where "denial of stay would cause both parties to incur significant expenses on litigation that may be rendered moot"). If this case proceeds past the pleadings stage, given the nature of the allegations, the technology involved, and the fact that the case is styled as a class action, IGN will disproportionately bear the burden and expense of discovery. It is also possible that IGN will need to take discovery from third parties and retain technical and damages experts, undertakings that "will require substantial effort on the part of all concerned" and "may well be unnecessary depending on the . . . ultimate decision" in *Variety Media*. *See Nguyen v. Marketsource, Inc.*, No. 17-cv-02063-AJB-JLB, 2018 WL 2182633, at *6 (S.D. Cal. May 11, 2018).

-9-

**C.      A Temporary Stay of Discovery Will Not Harm Plaintiff**

The final *Landis* factor—the "possible damage which may result [to Plaintiff] from granting a stay"—is de minimis. IGN requests a stay of limited duration, to last only until *Variety Media* is resolved. That briefing will be complete in short order, in June 2026. *See* Ex. D; *see also Wilson v. Rater8, LLC*, No. 20-CV-1515-DMS-LL, 2021 WL 347306, at *2 (S.D. Cal. Feb. 2, 2021) (finding "the risk of prejudice to Plaintiff [from a stay] is minimal [because] [t]he duration of the stay requested by Defendants is reasonably determinate"). And this case—which is in its very early stages—can resume promptly upon resolution. Indeed, as discussed in Sections II.B.1 and IV *supra*, plaintiffs in similar pen register cases have already stipulated to stays pending *Variety Media*, further demonstrating that a temporary delay in cases like this is equally in plaintiffs' interests and will not result in any harm. There is nothing about Plaintiffs' claim here that distinguishes them from those other cases or suggests they will incur unique harm resulting from a temporary stay.

**V.      CONCLUSION**

For the reasons stated above, the Court should stay proceedings in this case until the California Court of Appeal issues its forthcoming ruling in *Variety Media*.

Dated: May 26, 2026                                **PERKINS COIE LLP**

By: */s/ Lauren J. Tsuji*
Lauren J. Tsuji (Bar No. 300155)
James G. Snell (Bar No. 173070)
Anna Thompson-Lanners (*Pro Hac Vice*)

*Attorneys for IGN Entertainment, Inc.*

-10-