**PERKINS COIE LLP**
James G. Snell (Bar No. 173070)
*JSnell@perkinscoie.com*
3150 Porter Drive
Palo Alto, California 94304-1212
Telephone: +1.650.838.4300

Lauren J. Tsuji (Bar No. 300155)
*LTsuji@perkinscoie.com*
Anna Thompson-Lanners (*Pro Hac Vice*)
*AThompsonLanners@perkinscoie.com*
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile:  +1.206.359.9000

*Attorneys for Defendant IGN Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| PETER OSTINI, MICHAEL CHAVARRIA, DAVID RAMIREZ, ROBERT PRADO, and STACY PENNING, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>IGN ENTERTAINMENT, INC.,<br><br>Defendant. | Case No. 5:26-cv-01375-EJD<br><br>**IGN ENTERTAINMENT, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:      Aug. 13, 2026<br>Time:      9:00 a.m.<br>Location:  Courtroom 4, 5th Floor<br>Judge:     Hon. Edward J. Davila |

## NOTICE OF MOTION AND MOTION TO DISMISS

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on August 13, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard by the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, California, 95113, Defendant IGN Entertainment, Inc. ("IGN") will move the Court for an Order dismissing Plaintiffs Peter Ostini, Michael Chavarria, David Ramirez, Robert Prado, and Stacy Penning's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. IGN is also simultaneously moving to stay these proceedings pending the resolution of the interlocutory appeal in *Variety Media LLC v. Cal. Sup. Ct.*, which is currently before the California Court of Appeal, and is thus only seeking a decision on this Motion if the Court denies IGN's Motion to Stay. This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support thereof, the Request for Judicial Notice in support of this Motion, the Reply brief filed in support of this Motion, the papers on file in this action, oral argument at the hearing, and any other matters that the Court may properly consider.

This Motion is made on the grounds that Plaintiffs have not plausibly alleged facts sufficient to state a claim for violation of the California Information Privacy Act ("CIPA"), Cal. Penal Code §§ 638.50–55. Accordingly, IGN seeks dismissal of Plaintiffs' Complaint with prejudice.

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND .................................................................................. 2

III.    LEGAL STANDARD.............................................................................................. 3

IV.     ARGUMENT ........................................................................................................... 4

      A.    Plaintiffs Fail to State a Claim Under the Pen Register Act .................................. 4

          1.    The Pen Register Act is limited to telephonic communications. ............... 4

          2.    Plaintiffs' interpretation of the Pen Register Act is inconsistent with subsequently enacted laws governing online privacy including the CCPA, and would produce absurd results. ................................................. 6

          3.    Plaintiffs have failed to allege the elements of a pen register. ................... 9

      B.    The Rule of Lenity Warrants Dismissal................................................................. 12

V.      CONCLUSION...................................................................................................... 13

## **TABLE OF AUTHORITIES**

**CASES**

*Apple Inc. v. Superior Ct.*,
    56 Cal. 4th 128 (2013) ....................................................................................................... 9

*Attebery v. Atlas Finan. Solutions, Inc.*,
    No. 25STCV30118 (LA Cnty. Super. Ct., May 8, 2026) ............................................. 4

*Augustine v. Great Wolf Resorts, Inc.*,
    No. 23-cv-281-DMS-DTF, 2024 WL 3450967 (S.D. Cal. July 18, 2024) ............................ 10

*Balabbo v. Wildflower Brands, LLC*,
    No. 25STCV20971, 2026 WL 1122773 (Cal. Super. Ct., Apr. 6, 2026) ................................. 6

*Blalock v. EquipmentShare.com Inc.*,
    No. 30-2025-01508739-CU-MC-CJC (Orange Cnty. Super. Ct., Feb. 25, 2026) .................... 4

*Cammorata v. Sonifi Solutions, Inc.*,
    No. 25STCV25259, 2026 WL 500856 (Cal. Super. Ct., Feb. 18, 2026) ......................... 6, 12

*Cap . Records Inc. v. Thomas-Rasset*,
    No. 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009)....................................................... 9

*Casillas v. Calvin Klein, Inc.*,
    No. 25STCV0449, 2025 WL 3529009 (LA Cnty. Super. Ct. Nov. 25, 2025)........................ 12

*D'Antonio v. Smith & Wesson Inc.*,
    No. 25-cv-03085-PCP, 2026 WL 446310 (N.D. Cal. Feb. 17, 2026).................................... 10

*Doe v. Eating Recovery Cntr., LLC*,
    806 F. Supp. 3d 1109 (N.D. Cal . 2025) ........................................................................... 6, 7

*Gardena Hosp., L.P. v. Baass*,
    99 Cal. App. 5th 678 (2024)............................................................................................... 7

*Gonzales v. Uber Techs., Inc.*,
    305 F. Supp. 3d 1078 (N.D. Cal. 2018) ................................................................................ 10

*Heiting v. Taro Pharms. USA, Inc.*,
    709 F. Supp. 3d 1007 (C.D. Cal. 2023)................................................................................. 10

*Heiting v. Wildflower Brands, LLC*,
    No. 25STCV18507 (LA Cnty. Super. Ct., Apr. 16, 2026) ....................................................... 4

*Larkin v. Workers' Comp. Appeals Bd.*,
    62 Cal. 4th 152 (2015) ....................................................................................................... 4

*Leocal v. Ashcroft,*
    543 U.S. 1 (2004) ................................................................................................................. 13

*Licea v. Hickory Farms LLC,*
    No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ............................... 9

*Mollett v. Netflix, Inc.,*
    795 F.3d 1062 (9th Cir. 2015) ............................................................................................... 3

*Murray Co. v. Cal. Occupational Safety & Health Appeals Bd.,*
    180 Cal. App. 4th 43 (2009) .................................................................................................. 7

*Rodriguez v. IMDB.com, Inc.,*
    No. 24STCV14922, 2026 WL 886927 (LA Cnty. Super. Ct., Mar. 24, 2026) ........................ 6

*Rodriguez v. Plivo Inc.,*
    No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Oct. 2, 2024) ....................................... 11

*Rodriguez v. Sparc Grp., LLC,*
    No. 24STCV26946, 2025 WL 2993671 (Cal. Super. Ct. July 9, 2025) .................................. 8

*Sanchez v. Cars.Com Inc.,*
    No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ................................... 4

*Sanchez v. MGIC Investment Corp.,*
    No. 24STCV21788 (LA Cnty. Super. Ct. Jul. 16, 2025) ......................................................... 4

*Schallert v. Orkin LLC,*
    No. 24STCV31244, 2025 WL 4332757 (Cal. Super. Ct., Dec. 15, 2025) ...................... passim

*Schallert vs Palo Alto Networks, Inc.,*
    No. 25STCV17109, 2026 WL 754028 (Cal. Super. Ct., Mar. 6, 2026)  .............................. 4, 6

*Scharon v. Paramount Glob .,*
    No. 25STCV10585, 2025 WL 2996812 (LA Cnty. Super. Ct., Oct. 3, 2025) ......................... 4

*Starr v. Baca,*
    652 F.3d 1202 (9th Cir. 2011) ............................................................................................... 4

*Tsering v. Meta Platforms, Inc.,*
    No. 25-CV-01611-RFL, 2026 WL 89320 (N.D. Cal. Jan. 12, 2026) ................................... 10

*Twitter, Inc. v. Garland,*
    61 F.4th 686 (9th Cir. 2023) ................................................................................................ 10

*United States v. Henderson,*
    906 F.3d 1109 (9th Cir. 2018) ............................................................................................... 8

-iv-

*United States v. Lanier*,
    520 U.S. 259 (1997) ..................................................................................................... 13

*United States v. N . Y . Tel. Co.*,
    434 U.S. 159 (1977) ..................................................................................................... 11

*United States v. Nosal*,
    676 F.3d 854 (9th Cir. 2012) ....................................................................................... 13

*United States v. Taketa*,
    923 F.2d 665 (9th Cir. 1991) ....................................................................................... 11

*Wray v. Humble Bundle, Inc.*,
    No. 25-CV-01592-TLT, 2025 WL 4662287 (N.D. Cal. Oct. 15, 2025) ....................... 1

*Wray v. Humble Bundle, Inc.*,
    No. 25-CV-01592-TLT, 2025 WL 4662288 (N.D. Cal. Sept. 8, 2025) ......................... 1

**STATUTES**

18 U.S.C. § 3123 ................................................................................................................ 11

Cal. Civ. Code § 1798 *et seq.* ........................................................................................ 2, 7

Cal. Civ. Proc. Code § 1859 .............................................................................................. 7

Cal. Penal Code § 638.50 *et seq.* ............................................................................ passim

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Peter Ostini, Michael Chavarria, David Ramirez, Robert Prado, and Stacy Penning seek to stretch a narrow, criminal statute aimed at law enforcement's use of telephone pen registers into a sweeping prohibition on the ordinary, ubiquitous operation of modern websites.[1] Plaintiffs contend that every time any person visits its website, IGN commits a *criminal* violation of the California Information Privacy Act ("CIPA"), Cal. Penal Code §§ 638.50–55 (the "Pen Register Act" or "Act"). Plaintiffs' misguided theory rests on the premise that routine collection of non-content technical data—such as IP addresses and device or browser metadata—by widely adopted online advertising and website analytics technologies is the statutory equivalent of installing a "pen register." That theory finds no support in the statute's text, structure, and history, which instead make plain that the Pen Register Act was crafted for telephonic pen/trap activity in criminal investigations, not for website operators' use of basic internet technologies that log traffic, secure sites, measure performance, and serve content.

Accordingly, Plaintiffs' Complaint fails on the merits for several reasons. *First*, read in context, the Pen Register Act applies to devices attached to telephone lines and used by law enforcement subject to judicial authorization—not to code snippets required to allow the internet to work and that help a website receive and route user requests. The Act repeatedly references telephone lines, emergency orders, and criminal investigative procedures. The legislative history and alignment with the federal analog confirms the same focus.

*Second*, Plaintiffs' broad reading of the Pen Register Act would upend the framework

---

[1] Plaintiffs concede that they signed up for accounts with IGN. Compl. ¶¶ 7-11. As part of that account sign-up process, IGN believes that Plaintiffs agreed to arbitrate the claims that are the subject of this litigation. To date, however, Plaintiffs have refused to provide their email addresses or other account-identifying information that would enable IGN to confirm their agreements to arbitrate and move to compel arbitration. Despite Plaintiffs' suggestion in their Complaint that IGN's Arbitration Agreement is unenforceable (*see id.* ¶¶ 105-117), identical terms have been held enforceable in related matters involving the same counsel. *See Wray v. Humble Bundle, Inc.*, No. 25-CV-01592-TLT, 2025 WL 4662288 (N.D. Cal. Sept. 8, 2025); *Wray v. Humble Bundle, Inc.*, No. 25-CV-01592-TLT, 2025 WL 4662287, at *1 (N.D. Cal. Oct. 15, 2025). IGN expressly reserves its right to bring such a motion as to some or all of Plaintiffs' claims in the future, if or when additional information is alleged or provided in discovery establishing those claims' arbitrability. Nothing in this Motion should be construed as a waiver of that right.

-1-

enacted in the California Consumer Privacy Act, Cal. Civ. Code § 1798.100 *et seq*. ("CCPA")—a subsequent law that expressly addresses the collection and sharing of online identifiers and network activity, striking a balance through opt outs and disclosures rather than criminalization—as well as related laws recently enacted, by creating sweeping criminal liability for ordinary web operations. This result is as untenable as it is absurd.

*Third*, even if Plaintiffs could show that the Pen Register Act could be read to reach some internet activity, they have not plausibly alleged the elements of a pen register offense. They identify no underlying "communication with content" to which any dialing, routing, addressing, or signaling information might attach; they do not plead that any collected information was "reasonably likely to identify the source" of such a communication; and they describe only the collection of originating identifiers (such as a user's IP address), not the destination information (e.g., the dialing, routing, addressing, and signaling information) pen registers capture.

*Finally*, at a minimum, the rule of lenity forecloses Plaintiffs' expansive construction. The Pen Register Act is a criminal law. As such, if any ambiguity remains after applying the canons and legislative history, the Court must adopt the narrower reading that avoids criminalizing routine website functionality absent a clear legislative command.

The Complaint attempts to transform ordinary, widely accepted website practices into a criminal pen-register scheme. Because Plaintiffs misapply the statute and fail to plead the essential elements in any event, the Court should dismiss their Complaint in its entirety. And because these legal defects cannot be cured through amendment, the dismissal should be with prejudice.

## II.   FACTUAL BACKGROUND

Plaintiffs bring a single claim under the Pen Register Act. Compl. ¶¶ 127–135. The Pen Register Act prohibits the installation or use of "a pen register or a trap and trace device without first obtaining a court order" unless the user is an "electronic communication service" or "wire communication service" provider and meets one of five enumerated exceptions, one of which is when the "consent of the user of that service has been obtained." Cal. Penal Code § 638.51(a), (b)(5). The Act defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a

-2-

wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). For years, "pen registers" have been commonly understood as tools used to capture data related to the destination information for telephone calls, and elsewhere in the Act there are express references to telephones for purposes of law enforcement obtaining the requisite warrant for their installation and use. *See id.* §§ 638.52, 638.53.

Plaintiffs allege that when users visit IGN's website (www.ign.com), IGN enables the installation and execution of third-party tracking technologies operated by Google (including DoubleClick and Google Analytics) and Yahoo. Compl. ¶¶ 3, 132. Plaintiffs claim these so-called "Trackers" collect users' Internet Protocol (IP) addresses and other device-level identifiers such as browser and device type, user-agent strings, cookies, and persistent advertising IDs, and that IGN and the third parties use the collected data to monitor activity, analyze traffic patterns, and support advertising and marketing efforts. *Id.* ¶¶ 3, 98. Plaintiffs claim these Trackers capture "routing, addressing, or signaling information" and therefore constitute "pen registers" under Section 638.50(b), and that IGN installed and used such devices or processes without first obtaining users' prior consent or a court order, in violation of Section 638.51(a). *Id.* ¶¶ 5, 64, 94. Plaintiffs seek statutory damages pursuant to Section 637.2. *Id.* ¶ 135.

Notably, Plaintiffs' entire theory rests on the collection and use of non-content technical identifiers and network information (e.g., IP address and device/browser metadata) for advertising and analytics. The complaint does not allege that IGN collected the *contents* of any communications (which the statutory definition of "pen register" excludes) or that IGN collected sensitive personal information such as financial account numbers, medical information, credentials, or precise geolocation. Nor do Plaintiffs allege they were deceived or defrauded in connection with their use of the website. *See, e.g.*, Compl. ¶¶ 20–22, 3, 31–32, 60–63, 90–93, 95, 128–135.

## III.   LEGAL STANDARD

Dismissal under Rule 12(b)(6) is appropriate where "there is either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal claim." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted). "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause

-3-

of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," which "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## IV.    ARGUMENT

### A.    Plaintiffs Fail to State a Claim Under the Pen Register Act

#### 1.    The Pen Register Act is limited to telephonic communications.

Referencing the statutory language and legislative history of the Pen Register Act, numerous courts have found that it is limited to telephones. *See, e.g., Heiting v. Wildflower Brands, LLC*, No. 25STCV18507 (LA Cnty. Super. Ct., Apr. 16, 2026) (sustaining demurrer of trap and trace claim because the statute's purpose is limited to telephones) (Request for Judicial Notice in Support of IGN's Motion to Dismiss ("RJN"), Ex. A); *Attebery v. Atlas Finan. Solutions, Inc.*, No. 25STCV30118 (LA Cnty. Super. Ct., May 8, 2026) (same) (RJN, Ex. B); *Blalock v. EquipmentShare.com Inc.*, No. 30-2025-01508739-CU-MC-CJC (Orange Cnty. Super. Ct., Feb. 25, 2026) (same) (RJN, Ex. C); *Schallert v. Orkin LLC*, No. 24STCV31244, No. 2025 WL 4332757 (Cal. Super. Ct., Dec. 15, 2025) (same); *Scharon v. Paramount Glob.*, No. 25STCV10585, 2025 WL 2996812 (LA Cnty. Super. Ct., Oct. 3, 2025) (same); *Schallert vs Palo Alto Networks, Inc.*, No. 25STCV17109, 2026 WL 754028 (Cal. Super. Ct., Mar. 6, 2026) (same); *Sanchez v. MGIC Investment Corp.*, No. 24STCV21788 (LA Cnty. Super. Ct. Jul. 16, 2025) (same) (RJN, Ex. D); *Sanchez v. Cars.Com Inc.*, No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) (same).

***Statutory Language***: The statutory language of the Act confirms that it is limited to telephone lines. Plaintiffs will likely argue that the Court should interpret the Act based on only a few select sentences in Section 638.51, which they will claim render it broad enough to include their website-based theory. However, the Court must consider "cross-referenced" provisions and the overall "structure of the statutory scheme," even for the first stage of statutory construction. *Orkin*, 2025 WL 4332757 at *3 (citing *Larkin v. Workers' Comp. Appeals Bd.*, 62 Cal. 4th 152, 160 (2015)). As the Los Angeles Superior Court recently reasoned in *Orkin*:

-4-

[S]ection 638.51 prohibits the use of pen registers or trap-and-trace devices except as enumerated in subdivision (b) or subject to a court order pursuant to sections 638.52 and 638.53. These cross-referenced provisions set forth the regular and emergency procedures, respectively, for a police officer to apply for an order authorizing the installation or use of a pen register or trap-and-trace device. Crucially, section 638.52, which establishes the ordinary procedure to obtain a written order, requires that the order specify:

> (1) The identity, if known, of the person to whom is leased or in whose name is listed **the telephone line** to which the pen register or trap and trace device is to be attached.
>
> [. . .]
>
> (3) The number and, if known, physical location of **the telephone line** to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order.
>
> [. . .]

(§ 638.52(d) [emphasis added].) The use of "telephone line" in this provision sharply narrows the scope of the definition of "pen register" or "trap and trace device" in the context of this statute. Indeed, reading the provisions together, it appears overwhelmingly likely that the Legislature had in mind devices attached to a telephone line when it referred to "trap and trace" devices in sections 638.50 and 638.51.

2025 WL 4332757 at *3–4.

The application of the appropriate tools of statutory construction further supports the conclusion that the Act is limited to telephones. There is no specific reference in the statute concerning website tracking, and yet there are numerous specific references to telephones. Under the canons of *noscitur a sociis* ("it is known from its associates") and *ejusdem generis* ("of the same kind"), the telephonic references limit how more general terms must be understood. *Id.* at *5–6.

***Legislative History*:** The legislative history also supports a reading limiting the Act to telephone lines. The bill's "Author's Statement" reads, in part:

> One of the tools available to law enforcement is called a 'pen register' which allows law enforcement officers to record all outgoing numbers ***from a particular telephone line***. In addition, another tool law enforcement uses is called a 'trap and trace device' which allows them t***o record what numbers have called a specific telephone line***, i.e. all incoming phone numbers. Both pen registers and trap and trace devices do not record audio or text messages and ***cannot be used to obtain real-time location data on a cellular***

-5-

*telephone*. But these tools are extremely useful for law enforcement in situations such as gang and narcotic investigations.

AB 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations. The bill will require law enforcement officers to obtain a court order before using such devices by providing a judge with information that the use of information is relevant to an ongoing criminal investigation . . .

Assemb. Comm. on Pub. Safety, Analysis of Assemb. B. 929, 2015–2016 Reg. Sess., at 9 (Cal. Apr. 7, 2015) (emphasis added) (RJN, Ex. E). And when the California legislature amended the Act one year later, it again referred to "pen registers" and "trap and trace devices" only as devices intended to track telephone numbers. S. Comm. on Pub. Safety, Analysis of Assemb. B. 1924, 2015–2016 Reg. Sess., at 1 (Cal. June 28, 2016) (RJN, Ex. F). Both enactment of the Pen Register Act in 2015 and its amendment in 2016 came well after the ubiquitous use of the internet. This, in light of the absence of any language in the Act relating to the internet, also confirms the legislative intent to limit its scope to telephone lines. *Orkin*, 2025 WL 4332757 at *5.

**2.      Plaintiffs' interpretation of the Pen Register Act is inconsistent with subsequently enacted laws governing online privacy including the CCPA, and would produce absurd results.**

Even if the statute did extend beyond telephone lines—and it does not, as discussed above in Section IV.A.1, it still would not apply to the ubiquitous website technologies described in Plaintiffs' Complaint, as numerous state courts have now concluded. *See, e.g.*, *Balabbo v. Wildflower Brands, LLC*, No. 25STCV20971, 2026 WL 1122773 (Cal. Super. Ct., Apr. 6, 2026) (holding the trap and trace act did not apply to online tracking tools); *Rodriguez v. IMDB.com, Inc.*, No. 24STCV14922, 2026 WL 886927 (Cal. Super. Ct., Mar. 24, 2026) (same); *Palo Alto Networks*, 2026 WL 754028 (same); *Cammorata v. Sonifi Solutions, Inc.*, No. 25STCV25259, 2026 WL 500856 (Cal. Super. Ct., Feb. 18, 2026) (same).

If the "[l]egislature really intend[ed] to subject companies like [IGN] to criminal liability for using third-party software to track website activity," one would expect to find *some* indication of that intent in the statute's text, context, or history, but no such intent appears anywhere in the Act. *Doe v. Eating Recovery Cntr., LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025) (dismissing a similar claim against a website based on CIPA Section 631(a)). Instead, the legislature has since

passed more recent and more specific legislation explicitly governing this space, most notably the CCPA, which "more clearly speak[s] to the practice of data sharing" by websites. *Id.* at 1119. The CCPA specifically identifies IP addresses as protected "personal information," along with "other similar identifiers," Cal. Civ. Code § 1798.140(v)(1)(A), and "Internet or other electronic network activity information," *id.* § 1798.140(v)(1)(F). Rather than *banning* the collection of such information or requiring express consent, the CCPA provides a "right to *opt out*" from its sale. *Id.* § 1798.120(a) (emphasis added). The CCPA's data-sharing provisions have since been finetuned— including through 2020's Proposition 24, which strengthened data-privacy protections, *see e.g.*, *id.* § 1798.105 (enacting a right to" delete any personal information"), and 2025's AB 566, which Governor Newson signed on October 8, 2025, to further strengthen opt-out rights by requiring web browsers to include them.[2] Thus, the CCPA, Proposition 20, and AB 566 regulating the collection of information from consumers online all demonstrate the legislature's intent to *permit* websites to collect IP address and other metadata from consumers online pursuant to certain explicit guidelines, including opt-out rights. California follows the "general American law" and principle of "common sense" that a "specific statute controls a general one." *Gardena Hosp., L.P. v. Baass*, 99 Cal. App. 5th 678, 682–83 (2024); *see* Cal. Civ. Proc. Code § 1859. Because the CCPA directly speaks to the circumstances under which a website may collect visitor data, and because it is both more recent and more specific than the Pen Register Act, the CCPA "govern[s] in respect to [the] subject" of website data-tracking—even if the Pen Register Act might appear applicable if read "standing alone" and devoid of broader context. *See Murray Co. v. Cal. Occupational Safety & Health Appeals Bd.*, 180 Cal. App. 4th 43, 53 (2009).

Beyond this readily apparent conflict with the CCPA, Plaintiffs' extreme reading of the Pen Register Act would represent a dramatic change in the way the internet is regulated *despite* the Act's silence as to the internet. *See Orkin*, 2025 WL 4332757 at *6. Laws like the CCPA, which expressly regulates the tracking of consumers online, show that the legislature is explicit when it

---

[2] AB-566 Cal. Consumer Priv. Act of 2018, *available at* https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202520260AB566.

wants to regulate the internet, and yet it did not do so in the drafting of the Act. *Id.* As the court reasoned in *Orkin*:

> Striking the right balance between privacy and utility in web browsing is a difficult and important issue. And, precisely because it is a difficult and important issue, the Court cannot conclude that the Legislature *sub silentio* intended to establish a regulatory regime over web tracking through the cryptic reference to a "trap and trace device" in sections 638.50 and 638.51.

*Id.* at *6.

Rather than striking any sort of balance, Plaintiffs' reading of the Act would effectively upend the internet. As the Los Angeles Superior Court recently concluded, the Act "cannot reasonably be read" so broadly as to establish liability where a website collects an "IP address"— even when the defendant allegedly enables "third part[ies]" to access that data—or else "*every website interaction that identifies electronic information about the user in a manner that allows the website to [f]unction*" would become unlawful. *Rodriguez v. Sparc Grp., LLC*, No. 24STCV26946, 2025 WL 2993671, *3 (Cal. Super. Ct. July 9, 2025) (emphasis added). But that absurd outcome is precisely the result urged by Plaintiffs.

Plaintiffs' entire case is premised on the misguided theory that the receipt of their IP addresses by analytics and advertising tools used in the ordinary course of business constitutes an unlawful pen register. IP addresses are unique identifiers assigned to a device connected to a computer network that identify the device on the network and help route data to and from the device correctly. *See United States v. Henderson*, 906 F.3d 1109, 1111 n.1 (9th Cir. 2018). If computers could not exchange IP addresses, they could not find and communicate with each other. Users could not locate websites, and websites could not send content to users. According to Plaintiffs, any person or company that receives an IP address would nonetheless run the risk of violating a criminal statute.[3]

---

[3] Plaintiffs' Complaint is silent as to how IGN would supposedly comply with the Pen Register Act as they interpret it. Plaintiffs allege that IGN did not obtain a court order (*see, e.g.*, Compl. ¶¶ 19. 64), but the Act only authorizes governmental agencies to obtain court orders for pen registers. Cal. Penal Code § 638.51. Section 638.51(a) permits a "provider of electronic or wire communication service" to use a pen register or trap and trace device "if the consent of the user of that service has been obtained." *See* Cal. Penal Code §§ 638.51(b)(1)-(5); 638.50; 629.51(a)(1), (2). However, Plaintiffs do not make clear whether they believe IP addresses could be disclosed with

-8-

Apart from the basic functioning of modern websites, many other obviously permissible website functions, which are commonly supported by third parties, *must* receive visitors' IP addresses: from consent-management platforms that ascertain a visitor's location to comply with jurisdiction-specific privacy laws like California's CCPA;[4] to software that protects against cyber-attacks like Distributed Denial-of-Service Attacks (DDoS), which operate by blocking traffic from known malicious IP addresses.[5] Plaintiffs' theory that the mere capturing of a website visitor's IP address constitutes a pen register would criminalize all of these load-bearing features of the modern Internet—including those that are essential to comply with other laws, such as the CCPA.

Common sense has led courts in California and elsewhere to reject "[s]uch a broad based interpretation [that] would potentially disrupt a large swath of internet commerce." *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024); *Cap. Records Inc. v. Thomas-Rasset*, No. 06-1497 (MJD/RJE), 2009 WL 1664468, at *3 (D. Minn. Jun. 11, 2009) (noting that if pen-register prohibitions "did apply in those cases, then the Internet could not function"). Contrary to Plaintiffs' assertions otherwise, the California Legislature clearly did not hide an "elephant[ ]"—upheaving the internet as-we-know-it via criminal liability for commonplace website technologies—in the "mousehole[ ]" of a statute intended to enable state law enforcement to obtain pen/trap orders. (citation modified). The Court should decline Plaintiff's invitation to stretch the Act to criminalize a fundamental feature of the "enormous yet unforeseen advent of online commerce" through statutory language that does not clearly mandate that outcome. *Apple Inc. v. Superior Ct.*, 56 Cal. 4th 128, 150 (2013).

### 3.   Plaintiffs have failed to allege the elements of a pen register.

Even if the Act were not limited to telephonic communications *and* it applied to websites like IGN's, Plaintiffs' claims would still fail because they cannot allege multiple elements required

---

user consent in the absence of a court order or how such consent would be obtained.

[4] *See* Tilman Harmeling, *What you need to know about consent management: A complete guide*, Usercentrics (Mar. 26, 2025), https://usercentrics.com/knowledge-hub/consent-management/#:~:text=long%2Dterm%20relationships.-,What%20is%20a%20consent%20management%20platform%20(CMP)?,control%20over%20their%20personal%20data.

[5] *See* Akamai, Glossary: What is Blackhole Routing?, https://www.akamai.com/glossary/what-is-blackhole-routing (last visited May 26, 2026).

to state a claim, including (1) the existence of a communication, (2) that the information collected from them is "reasonably likely to identify the source" of such a communication, or (3) that the alleged pen register recorded destination data.

*First*, the exchange of basic metadata that Plaintiff alleges is not the kind of "communication" that can trigger liability under the Act. Section 638.50 defines a pen register as an instrument that "records or decodes" certain information about the device "from which a wire or electronic *communication* is transmitted," but not the "*contents*" of that communication. Cal. Penal Code § 638.50 (emphases added). In other words, the Act anticipates that a pen register will capture certain information (dialing, addressing, routing, or signaling information) about a specific type of communication, *i.e.*, a communication that conveys some "content"—or "substance, purpo[rt], or meaning" of an "intended message"—that is distinct from "record information regarding the characteristics of the message." *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1017-18 (C.D. Cal. 2023) (cleaned up). Interpreting similar protections for a "communication" under CIPA's wiretap provision (Section 631), courts have held that liability depends on intercepting a "communication with content"—which does not occur when a person merely accesses a website. *Augustine v. Great Wolf Resorts, Inc.*, No. 23-cv-281-DMS-DTF, 2024 WL 3450967, at *6 (S.D. Cal. July 18, 2024). A pen register must therefore capture dialing or addressing formation *associated with* an underlying communication. *Twitter, Inc. v. Garland*, 61 F.4th 686, 691 n.2 (9th Cir. 2023). Because merely accessing a website as Plaintiffs allege here (Compl. ¶ 96) is not a "communication" with "content" under Section 631, metadata collected from the mere visit to a website also does not trigger liability under Section 638.51, because there is no underlying communication. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1086 (N.D. Cal. 2018) ("opening a webpage" is "not a communication with content"); *see also Tsering v. Meta Platforms, Inc.*, No. 25-CV-01611-RFL, 2026 WL 89320, at *6 (N.D. Cal. Jan. 12, 2026) (dismissing pen register claim because plaintiffs did not adequately allege an underlying communication); *D'Antonio v. Smith & Wesson Inc.*, No. 25-cv-03085-PCP, 2026 WL 446310, at *5 (N.D. Cal. Feb. 17, 2026) (dismissing pen register claim because "[i]n the absence of any allegation that they communicated with the website, they cannot allege that the 'dialing, routing,

-10-

addressing, or signaling information' relating to any such communication was unlawfully tracked").

*Second*, Plaintiffs, by definition, have not alleged the use of a pen register because they have failed to allege the collection of the *destination* information or the "dialing, routing, addressing, or signaling" information related to a communication. It is well-established that a pen register is a device that records *destination* data, such as "the numbers dialed on a telephone" by the caller that identifies the called party's telephone number. *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 161 n.1 (1977); *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Oct. 2, 2024) ("Pen registers collect outgoing information, such as outgoing telephone numbers, outgoing email addresses, IP addresses of websites visited, location data that reveals sensitive information, and cell site information"); Cal. Penal Code § 638.50(b) (a pen register records or decodes "information *transmitted* by *an instrument or facility*") (emphasis added). But here, no destination information is alleged to have been recorded. Plaintiffs instead allege the collection of the *originating* IP address of their own devices. Compl. ¶ 132 (alleging the collection "of their IP addresses and other signaling information *to Google and Yahoo*"). But Plaintiffs' own IP addresses are analogous to their own phone numbers and are therefore not covered by the pen register definition. *See, e.g., United States v. Taketa*, 923 F.2d 665, 668 n.1 (9th Cir. 1991) (a pen register is "a device that records *the numbers dialed from a monitored telephone*") (emphasis added).[6] The data that would be akin to the numbers they dialed on a telephone would be the URL or IP address *of the websites they visited*, not their own. *Plivo*, 2024 WL 5184413, at *2. Plaintiffs do not allege that such information was collected.

*Third*, even if Plaintiffs were permitted to amend their complaint to shift their theory from the use of a pen register to the use of a trap and trace device, that claim would still fail. A trap and trace device is defined as a "device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling

---

[6] In 2015, the California Legislature adopted the structure, text, and definitions of the federal Act with few substantive changes, and the California Pen Register Act's prohibitions and exemptions are virtually identical to those in the federal Act. *Compare* 18 U.S.C. § 3123 *with* Cal. Penal Code § 638.51.

-11-

information *reasonably likely to identify the source of a wire or electronic communication*[.]" Cal. Penal Code § 638.50(c) (emphasis added). *See, e.g.*, *Cammorata*, 2026 WL 500856, *2; *Casillas v. Calvin Klein, Inc.*, No. 25STCV0449, 2025 WL 3529009, *2 (Cal. Super. Ct. Nov. 25, 2025). In *Cammorata*, the court found that allegations that the LinkedIn Insight Tag collected data like browser type, version, and configuration settings which created "unique device signatures" merely identified the type of technology the plaintiff used to access the website and did not suggest the collection of personally identifying information. No. 25STCV25259, *3. Similarly, in *Casillas*, the court found that allegations that the TikTok Pixel "was collecting [p]laintiff's data" were too "vague about the type of information contained in the 'incoming electronic and wire communications impulses' from [p]laintiff that identified [p]laintiff as the source of information but did not include the contents of communications . . ." No. 25STCV0449, *3. Further, the trap and trace provisions concern "the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information" incident to a communication, not merely any information that could be used to identify someone. Cal. Penal Code § 638.50(c).

Here, Plaintiffs might argue that the Trackers operate as a trap and trace device insofar as they capture "unique IDs," which can be used to "link each Website visitor to the third parties' databases and profiles of that user, therefore allowing the identification and tracking of individual users." Compl. ¶ 131. But, as in *Cammorata* and *Casillas*, Plaintiffs' allegations about "unique IDs" would not support an alternative claim for the use of a trap and trace device. No. 25STCV25259, *3; No. 25STCV0449, *3. Further, even if a "unique ID" can be used to link a website visitor to a third party database, this does not mean it is "addressing" information *incident to a communication* as required to state a claim. Cal. Penal Code § 638.50(c). And, in any event, IGN could consent to placement of a trap and trace device on its own website. *Id.* § 638.51(a), (b)(5).

**B.      The Rule of Lenity Warrants Dismissal**

At the very least, for each of the reasons set out above, the Act is ambiguous and the Court should therefore apply the rule of lenity, which requires courts to limit penal statutes "to conduct

-12-

clearly covered." *United States v. Lanier*, 520 U.S. 259, 266 (1997). This rule applies with equal force where, as here, a criminal law is applied in a "noncriminal context." *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004). When in doubt, the Court "must choose the interpretation least likely to impose penalties unintended" by the legislature. *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012).

The recent decision in *Doe v. Eating Recovery Center* is instructive. 2025 WL 2971090, at *1. Identifying ambiguities in the closely related CIPA Section 631(a), Judge Chhabria observed that it can be "borderline impossible to determine whether a defendant's online conduct fits within the language of" CIPA. *Id*. There, the alleged conduct was remarkably similar to Plaintiff's allegations here: the use of "data analytics" software to "track website activity." *Id*. at *6. But the court could not discern that the Legislature "really mean[t] to criminalize" such conduct through CIPA, especially in light of other California laws like CCPA that more clearly speak to the issue. *Id*.; *see supra* Section IV.A.2. The court therefore determined that the rule of lenity warranted summary judgment for the defendant. *Id*. Should the Court not find the language of the statute clearly in IGN's favor, that same logic warrants dismissal here.

## V.    CONCLUSION

For the reasons stated above, the Court should dismiss the Complaint in its entirety. Dismissal should be with prejudice because amendment is futile in light of that fact that the Pen Register Act does not apply, as a matter of law, to the alleged conduct that Plaintiffs' complain of.

Dated: May 26, 2026

**PERKINS COIE LLP**

By: */s/ James G. Snell*
Lauren J. Tsuji (Bar No. 300155)
James G. Snell (Bar No. 173070)
Anna Thompson-Lanners (*Pro Hac Vice*)

*Attorneys for IGN Entertainment, Inc.*

-13-